IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARLAUNDA J. CLARK, an Individual, | ) |
| | ) Case No.: |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BLUE CROSS AND BLUE SHIELD | ) **Trial by Jury Demanded** |
| OF NEBRASKA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

COMES NOW the Plaintiff through her counsel of record, Michael J. Merrick of Merrick Law Firm LLC, and for her Complaint against Defendant states as follows:

### NATURE OF THE ACTION

1. Defendant's customer service representative, Plaintiff Charlaunda Clark, was called the N-word by an employee of a dentist's office in Defendant's insurance network during a customer service call. Ms. Clark reported the racial slur to Defendant's management and asked that appropriate action be taken against the dentist's office. Instead, Defendant, the dentist's office and its employee who had called Ms. Clark the N-word continued to do business together, while Defendant began to closely monitor Ms. Clark. Not long thereafter Defendant fired Ms. Clark allegedly for saying the word "fuck" to herself at the beginning of a recorded phone call, even though the caller never heard it. Defendant's stated reason is a pretext to hide race discrimination and retaliation. Ms. Clark brings this wrongful termination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981 and the Nebraska Fair Employment Practice Act.

## JURISDICTION & VENUE

2. Subject matter jurisdiction is premised on the federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. ("Title VII") and 42 U.S.C. §1981 ("Section 1981") arise under federal law. This Court has supplemental jurisdiction over Plaintiff's Nebraska Fair Employment Practice Act ("NFEPA") claims under 28 U.S.C. §1367.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2002e-5(f)(3) as Defendant has employees and does business in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Plaintiff would have remained employed in this judicial district but for the unlawful employment practices alleged herein.

## PARTIES

4. Plaintiff Charlaunda J. Clark ("Clark") is a citizen of the United States and at all relevant times was employed by Defendant in Omaha, Nebraska.

5. Defendant Blue Cross and Blue Shield of Nebraska, Inc. ("Defendant" or "BCBS") is a Nebraska corporation doing business in Omaha, Nebraska as a health insurance provider.

## COMMON ALLEGATIONS

6. Clark is African American.

7. Clark commenced employment with BCBS on or about August 22, 2014.

8. Most recently Clark worked remotely from her home as a fulltime Customer Service Representative II assisting members and healthcare providers with benefits and claims questions.

9. Clark met BCBS's legitimate performance expectations.

2

10. On or about October 9, 2020, an employee of a provider-dentist's office called Clark the N-word during a phone call.

11. On or about October 9, 2020, Clark complained to her supervisor, Jennifer Wilson, ("Wilson") that the provider's employee had called her the N-word during a phone call.

12. Wilson then listened to a recording of the phone call.

13. Wilson subsequently met with Clark and blamed her for provoking the provider's employee.

14. Wilson asked Clark what she wanted to have happen.

15. Clark told Wilson that she wanted the provider reported to BCBS's executive team to have the provider removed from the BCBS network.

16. Wilson attempted to dissuade Clark from complaining further and warned her that she would experience repercussions if she escalated the matter to the executive team.

17. Nevertheless, Clark told Wilson she wanted to meet with the executive team.

18. A few days later Brandie Hobbs ("Hobbs"), Manager of Customer Services, and Brenda Wichman ("Wichman"), Vice President of Member Services, met with Clark.

19. Wichman told Clark that they had listened to a recording of the call.

20. Wichman and Hobbs blamed Clark for provoking the provider's employee.

21. Clark told Wichman and Hobbs that she did not want to have to speak again with the provider's employee who had called her the N-word.

22. Wichman told Clark that they would look into the matter and get back to her. Hobbs escalated the matter to Dana Medeiros, Manager of Provider Relations. Wichman escalated the matter to Debra Esser, Chief Medical Officer.

23. A few days later Wilson told Clark that management had spoken with the provider's office, and that if Clark received another call from the employee who had called her the N-word she could transfer the call to someone else.

24. Clark told Wilson that she was not comfortable speaking with that employee at all, even to transfer her to another BCBS representative.

25. BCBS could have removed the provider from its network for calling Clark the N-word, but it chose not to.

26. A few days later Wilson and Hobbs met with Clark and told her they did not know how the provider-dentist's office would handle the employee who had called her the N-word.

27. They told Clark that if the employee called again Clark could transfer her to another BCBS representative.

28. They also told Clark that she should focus on being polite and helpful during calls, and use the words "please" and "thank you."

29. At this point BCBS increased the frequency with which it monitored Clark's calls.

30. Upon information and belief the provider-dentist's office did not fire the employee for calling Clark the N-word during a business call.

31. On or about January 25, 2021, Wilson and Hobbs called Clark and told her they were terminating her employment because they heard her say "fuck" at the beginning of one of her recorded calls before she and the member started communicating.

32. Wilson and Hobbs played a portion of the subject recording for Clark.

33. Clark had no recollection of saying "fuck" before the call. If Clark, or her adult daughter who lived at home with Clark at the time, said the F-word it would have been inadvertent, for example in response to spilling a drink.

34. Clark did not direct the word "fuck" at the member during the call and would never do so to any member or provider.

35. The member on that call never complained to Clark about anything, and Clark was able to help the member resolve her problem during the call.

36. Upon information and belief the member on the call was not yet connected to Clark's line and/or did not hear the word "fuck" before they started communicating.

37. Upon information and belief the member on the call did not call BCBS management to complain about anything regarding her call with Clark.

38. It was common practice for customer service representatives to talk with each other or with family members between calls when working from home.

39. BCBS had never issued any disciplinary write-ups to Clark previously. She asked Wilson and Hobbs why they were abruptly firing her instead of giving her a warning especially since the member on the call apparently did not even hear the word "fuck" mentioned.

40. They gave the non-responsive answer that they had also listened to another recorded call where Clark "sounded frustrated."

41. BCBS treated Clark differently than similarly-situated Caucasian employees. For example, previously a Caucasian BCBS customer service representative had directly told a caller that she was a "fucking bitch," and yelled it so loudly that all of the employees on the floor heard it.

42. BCBS management, including Wichman, was aware that the Caucasian employee had directly called the member a "fucking bitch" during the call, but BCBS did not terminate the Caucasian employee's employment.

43. BCBS has stated that even if someone other than Clark had said the word "fuck" at her home in the background during the call, employees are still required to maintain a professional working environment at home.

44. Previously BCBS management heard a recorded call in which the customer service representative's husband had used the N-word in the background, but BCBS did not terminate that employee's employment. Unlike Clark, that employee had not complained about racial harassment.

45. Being called the N-word is incredibly hurtful, indeed traumatic, for any African American. What made it even worse for Clark was having to witness her employer continue to do business with the provider and its employee who called her the N-word, while she lost her job for allegedly saying the word "fuck" which was never heard by any member or provider.

6

46. A few days after being terminated, Clark emailed Joni Wheeler ("Wheeler"), EVP of Human Resources, to complain about her discriminatory and retaliatory termination. Wheeler did not reply to Clark. Instead Darrell Teitler, VP of Human Resources, called Clark.

47. Clark complained to Teitler about her discriminatory and retaliatory termination.

48. Upon information and belief BCBS did not investigate Clark's complaint that her termination was discriminatory and retaliatory.

## COUNT I
## TITLE VII HOSTILE WORK ENVIRONMENT

49. Defendant subjected Clark to a work environment in which the use of racial slurs, specifically including the N-word, was tolerated.

50. When Clark complained about racial harassment in the workplace, BCBS blamed Clark for provoking the dentist office's employee to call her the N-word.

51. When Clark complained about racial harassment in the workplace, Defendant continued to do business with the provider and its employee who had called her the N-word and began to closely monitor and scrutinize Clark's conduct.

52. BCBS failed to take reasonable steps to prevent and promptly correct racial harassment of Clark and to protect her from future racial harassment by the very individual who had called her the N-word.

53. BCBS unlawfully discriminated and retaliated against Clark after she complained about racial harassment.

54. Requiring Clark and other African American employees to work under such conditions constitutes a hostile work environment in violation of Title VII.

55. Defendant acted with malice and reckless indifference to Clark's federally-protected rights.

56. As a direct and proximate result of Defendants unlawful conduct, Clark suffered damages.

## COUNT II

## SECTION 1981 HOSTILE WORK ENVIRONMENT

57. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth in this Count II.

58. Requiring Clark and other African American employees to work under such conditions constitutes a hostile work environment in violation of 42 U.S.C. §1981.

59. Defendant acted with malice and reckless indifference to Clark's federally-protected rights.

60. As a direct and proximate result of Defendants unlawful conduct, Clark suffered damages.

## COUNT III

## NFEPA HOSTILE WORK ENVIRONMENT

61. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth in this Count III.

62. Requiring Clark and other African American employees to work under such conditions constitutes a hostile work environment in violation of the NFEPA.

63. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

## COUNT IV

## TITLE VII RACE DISCRIMINATION

64. Plaintiff incorporates by reference paragraphs 1 through 54 as though fully set forth in this Count IV.

65. Defendant violated Title VII by discriminating against Clark, including terminating her employment, because she is African American.

66. Defendant acted with malice and reckless indifference to Clark's federally-protected rights.

67. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

## COUNT V

## SECTION 1981 RACE DISCRIMIANTION

68. Plaintiff incorporates by reference paragraphs 1 through 53 and 58 as though fully set forth in this Count V.

69. Defendant violated 42 U.S.C. §1981 by discriminating against Clark, including terminating her employment, because she is African American.

70. Defendant acted with malice and reckless indifference to Clark's federally-protected rights.

71. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

## COUNT VI

## NFEPA RACE DISCRIMINATION

72. Plaintiff incorporates by reference paragraphs 1 through 53 and 62 as though fully set forth in this Count VI.

73. Defendant violated the NFEPA by discriminating against Clark, including terminating her employment, because she is African American.

74. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

## COUNT VII

## TITLE VII RETALIATION

75. Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth in this Count VII.

76. Plaintiff engaged in protected activity by participating in an EEO process with BCBS and opposing what she reasonably believed to be unlawful conduct under Title VII.

77. Defendant retaliated against Plaintiff by terminating her employment because she had engaged in protected activity in violation of Title VII.

78. Defendant acted with malice and reckless indifference to Clark's federally-protected rights.

79. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

## COUNT VIII

## SECTION 1981 RETALIATION

80. Plaintiff incorporates by reference paragraphs 1 through 53 and 58 as though fully set forth in this Count VIII.

81. Plaintiff engaged in protected activity by participating in an EEO process with BCBS and opposing what she reasonably believed to be unlawful conduct under 42 U.S.C. §1981.

82. Defendant retaliated against Plaintiff by terminating her employment because she had engaged in protected activity in violation of Section 1981.

83. Defendant acted with malice and reckless indifference to Clark's federally-protected rights.

84. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

## COUNT IX

## NFEPA RETALIATION

85. Plaintiff incorporates by reference paragraphs 1 through 53 and 62 as though fully set forth in this Count VI.

86. Plaintiff engaged in protected activity by participating in an EEO process with BCBS and opposing what she reasonably believed to be unlawful conduct under the NFEPA.

87. Defendant retaliated against Plaintiff by terminating her employment because she had engaged in protected activity in violation of the NFEPA.

88. As a direct and proximate result of Defendant's unlawful conduct, Clark suffered damages.

**WHEREFORE**, Plaintiff respectfully prays for judgment in her favor and against Defendant on all counts and for the following make-whole relief:

A. Preliminary and permanent injunctions enjoining Defendant from unlawfully discriminating or retaliating against Plaintiff and interfering with her employment;

B. Lost past and future wages and benefits in an amount to be proven at trial;

C. Compensatory damages in an amount to be proven at trial;

D. Punitive damages in an amount to be proven at trial;

E. Interest;

F. A tax offset award;

G. Other equitable relief including back pay, reinstatement and/or front pay;

H. Plaintiff's reasonable attorneys' fees and costs incurred herein; and

I. For such further relief that the Court may deem just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury.

## REQUEST FOR PLACE OF TRIAL

Plaintiff requests Omaha as the place for trial.

CHARLAUNDA J. CLARK

By: /s/Michael J. Merrick
    Attorney No. 19855

Michael J. Merrick
Merrick Law Firm LLC
1004 Farnam Street, Suite 103
Omaha, Nebraska 68102
Tel. (402) 933-4256
Fax (402) 513-6504
merrick@merricklawfirm.com